**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| IN RE:<br>HO WAN KWOK, et al.,<br>*Debtors*.[1] | Chapter 11<br>Case No. 22-50073 (JAM)<br>(Jointly Administered) |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE<br>*Plaintiff,*<br>—v.—<br>ACA CAPITAL GROUP LIMITED ET AL.,<br>*Defendants.* | Adv. Proc. No. 24-05249 (JAM)<br><br><br><br>May 7, 2025 |

# NOTICE OF APPEAL

PLEASE TAKE NOTICE that pursuant to Fed. R. Bankr. P. 8001 *et seq.,* G Club Operations LLC ("G Club") and G Club International Limited ("GCI," and together with G Club, the "Defendants"), the defendants in the above-captioned adversary proceeding, hereby file notice of their appeal from the Bankruptcy Court's April 23, 2025 *Memorandum of Decision and Order Denying Motions to Dismiss* filed in the above-captioned adversary proceeding, Adv. Pro. No. 24-05249 (the "Adversary Proceeding") at ECF No. 133 (the "Decision"), denying Defendants'

[1] The Debtors in the main Chapter 11 case are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok.

*Motion to Dismiss Amended Adversary Complaint* (the "Motion to Dismiss"), filed in the Adversary Proceeding at ECF No. 116.[2] A copy of the Ruling is attached hereto as Exhibit A.

Luc A. Despins, Chapter 11 Trustee (the "Trustee"), filed his objection to the Motion to Dismiss entitled *Chapter 11 Trustee's Objection to Motions to Dismiss Amended Adversary Complaint* in the Adversary Proceeding at ECF No. 121. Defendants filed their reply in further support of the Motion to Dismiss in the Adversary Proceeding at ECF No. 126.

Nothing in this Notice of Appeal shall be construed to waive any defenses of Defendants, including as to jurisdiction, venue, or any other rights.

The names of all parties to the Court's order appealed from and the names, addresses and telephone numbers of their respective attorneys are as follows:

Jeffrey M. Sklarz (ct20938)
Kellianne Baranowsky (ct26684)
Michelle A. Antao (ct31715)
Green & Sklarz LLC
One Audubon Street, 3rd Floor
New Haven, CT 06511
(203) 285-8545
jsklarz@gs-lawfirm.com
kbaranowsky@gs-lawfirm.com
mantao@gs-lawfirm.com

*Representing*

**G Club Operations LLC**
53 Calle Palmeras, Suite 1401
Puerta De Tierra
San Juan, Puerto Rico 00901

and

**G Club International Limited**
53 Calle Palmeras, Suite 1401
Puerta De Tierra
San Juan, Puerto Rico 00901

*Defendants and Appellants*

****************************

[2] On April 25, 2025, the Court entered an *Order Correcting Memorandum of Decision* at ECF No. 134, correcting one citation in the Decision.

Douglas S. Skalka (ct00616)
Patrick R. Linsey (ct29437)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor New Haven, Connecticut 06510
(203) 781-2847
dskalka@npmlaw.com
plinsey@npmlaw.com

and

Nicholas A. Bassett (pro hac vice)
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C., 20036
(202) 551-1902
nicholasbassett@paulhastings.com

and

Douglass Barron (pro hac vice)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6079
douglassbarron@paulhastings.com

Counsel for the Chapter 11 Trustee

*Representing* **Luc A. Despins, Chapter 11 Trustee**
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166

*Chapter 11 Trustee and Appellee*

**DEFENDANTS**
**G CLUB OPERATIONS LLC**
**G CLUB INTERNATIONAL LIMITED**

By: */s/ Jeffrey M. Sklarz*
GREEN & SKLARZ LLC
Jeffrey M. Sklarz (ct20938)
Kellianne Baranowsky (ct26684)
Michelle A. Antao (ct31715)
One Audubon St, 3rd Floor
New Haven, CT 06511
Tel: 203-285-8545
jsklarz@gs-lawfirm.com
kbaranowsky@gs-lawfirm.com
mantao@gs-lawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below, a copy of the foregoing was served via CM/ECF. Parties may access this filing through the Court's CM/ECF system.

Date: May 7, 2025 *[/s/ Jeffrey M. Sklarz]*

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| In re:<br><br>HO WAN KWOK, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 22-50073 (JAM)<br><br>(Jointly Administered) |
| LUC A. DESPINS, IN HIS CAPACITY AS CHAPTER 11 TRUSTEE FOR THE ESTATE OF HO WAN KWOK,<br><br>Plaintiff,<br><br>v.<br><br>ACA CAPITAL GROUP LTD., CELESTIAL TIDE LIMITED, G CLUB INTERNATIONAL LIMITED, G CLUB OPERATIONS LLC, G FASHION (CA), G FASHION HOLD CO A LIMITED, G FASHION HOLD CO B LIMITED, G FASHION INTERNATIONAL LIMITED, GFASHION MEDIA GROUP INC., GF IP, LLC, GF ITALY, LLC, GFNY, INC., HAMILTON CAPITAL HOLDING LIMITED, HAMILTON INVESTMENT MANAGEMENT LIMITED, HAMILTON OPPORTUNITY FUND SPC, HIMALAYA CURRENCY CLEARING PTY LTD., HIMALAYA INTERNATIONAL CLEARING LIMITED, HIMALAYA INTERNATIONAL FINANCIAL GROUP LIMITED, HIMALAYA INTERNATIONAL PAYMENTS LIMITED, HIMALAYA INTERNATIONAL RESERVES LIMITED, MAJOR LEAD INTERNATIONAL LIMITED, MEI GUO, RULE OF LAW FOUNDATION III, INC., RULE OF LAW SOCIETY IV, INC., and WILLIAM JE,<br><br>Defendants. | Adv. P. No. 24-05249 (JAM)<br><br>Re: ECF Nos. 114, 116 |

**APPEARANCES**

Michael T. Conway (argued)
Lazare Potter Giacovas & Moyle LLP
747 Third Avenue, 16th Floor
New York, NY 10017

*Counsel for Movants ACA Capital Group, Ltd., Celestial Tide Limited, G Fashion (CA), G Fashion Hold Co A Limited, G Fashion Hold Co B Limited, G Fashion International Limited, GFashion Media Group Inc., GF IP, LLC, GF Italy, LLC, GFNY, Inc., Hamilton Capital Holding Limited, Hamilton Investment Management Limited, Hamilton Opportunity Fund SPC, Himalaya Currency Clearing Pty Ltd., Himalaya International Clearing Limited, Himalaya International Financial Group Limited, Himalaya International Payments Limited, Himalaya International Reserves Limited, Major Lead International Limited, and Mr. William Je, Defendants*

Jeffrey M. Sklarz (argued)
Kellianne Baranowsky
Michelle Amanda Antao
Green & Sklarz LLC
One Audubon Street, Third Floor
New Haven, CT 06511

*Counsel for Movants G Club International Limited and G Club Operations LLC, Defendants*

Douglass Barron
Paul Hastings LLP
200 Park Avenue
New York, NY 10166

and

Nicholas A. Bassett (argued)
Paul Hastings LLP
2050 M Street NW
Washington, D.C. 20036

Patrick R. Linsey
Douglas S. Skalka
Neubert, Pepe & Montieth
195 Church Street, 13th Floor
New Haven, CT 06510

*Counsel for Respondent Mr. Luc A. Despins, Chapter 11 Trustee for the Estate of Mr. Ho Wan Kwok, Plaintiff*

**MEMORANDUM OF DECISION**
**AND ORDER DENYING MOTIONS TO DISMISS**

Julie A. Manning, United States Bankruptcy Judge

## I. INTRODUCTION

Before the Court are two motions to dismiss (the "Motions to Dismiss"), each filed by multiple defendants jointly. (ECF Nos. 114, 116.) This adversary proceeding was commenced by Mr. Luc A. Despins, in his capacity as Chapter 11 trustee (the "Trustee") for the estate of Mr. Ho Wan Kwok (the "Individual Debtor"). The Trustee alleges the Individual Debtor beneficially owns several corporate entities and their assets and such entities formed under the laws of a United States jurisdiction are the *alter egos* of the Individual Debtor. (ECF No. 1.)[1] Several defendants among these entities and their legal owners have moved to dismiss this adversary proceeding.

The first Motion to Dismiss (the "Assorted Defendants' Motion") was filed by twenty defendants (together, collectively, the "Assorted Defendants"), namely: (1) ACA Capital Group, Ltd. ("ACA Capital"); (2) Celestial Tide Limited ("Celestial Tide"); (3) G Fashion (CA) ("GFCA"); (4) G Fashion Hold Co A Limited ("GF Hold A"); (5) G Fashion Hold Co B Limited ("GF Hold B"); (6) G Fashion International Limited ("GF International"); (7) GFashion Media Group Inc. ("GF Media"); (8) GF IP, LLC ("GF IP"); (9) GF Italy, LLC ("GF Italy"); (10) GFNY, Inc. ("GFNY"); (11) Hamilton Capital Holding Limited ("Hamilton Capital"); (12) Hamilton Investment Management Limited ("Hamilton Investment"); (13) Hamilton Opportunity Fund SPC ("Hamilton Opportunity"); (14) Himalaya Currency Clearing Pty Ltd. ("Himalaya

[1] References to the docket in this adversary proceeding will be styled "ECF No. __". References to the docket in the main case, *In re Kwok*, Case No. 22-50073 (JAM), will be styled "Main Case ECF No. __".

Currency"); (15) Himalaya International Clearing Limited ("Himalaya Clearing"); (16) Himalaya International Financial Group Limited ("Himalaya Financial"); (17) Himalaya International Payments Limited ("Himalaya Payments"); (18) Himalaya International Reserves Limited ("Himalaya Reserves"); (19) Major Lead International Limited ("Major Lead"); and (20) Mr. William Je. (ECF No. 114.) The second Motion to Dismiss (the "G Club Defendants' Motion") was filed by defendants (21) G Club International Limited ("G Club International") and (22) G Club Operations LLC ("G Club Operations", and together with G Club International, collectively, the "G Club Defendants"). (ECF No. 116.)

This memorandum of decision sets forth the Court's conclusions of law. Fed. R. Civ. P. 52(a), *made applicable by* Fed. R. Bankr. P. 7052. For the reasons set forth below, the Motions to Dismiss are **DENIED**.

## II. BACKGROUND

On February 15, 2022, the Individual Debtor filed a voluntary Chapter 11 petition in this Court. (Main Case ECF No. 1.) On June 15, 2022, presented with allegations related to the Individual Debtor's financial mismanagement and an alleged shell game involving numerous corporate *alter egos*, the Court entered a memorandum of decision and order appointing a Chapter 11 trustee to administer the Individual Debtor's bankruptcy estate. (Main Case ECF No. 465.) *In re Kwok*, 640 B.R. 514 (Bankr. D. Conn. 2022). On July 8, 2022, Mr. Despins was appointed as the Trustee. (Main Case ECF No. 523.)

On February 15, 2024, the Trustee commenced this adversary proceeding. (ECF No. 1.) The action was stayed during the pendency of the Individual Debtor's criminal trial. (Main Case ECF No. 3038.) On July 18, 2024, after the Individual Debtor's trial had concluded, the action resumed. (ECF No. 37.) Several defendants defaulted on the original complaint. (ECF No. 79.)

On October 22, 2024, these defaulted defendants were severed from this action. (ECF No. 102; *see, generally*, *Despins v. Alfa Glob. Ventures Ltd. (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 24-05318 (JAM) (Bankr. D. Conn. Nov. 26, 2024).) On October 29, 2024, the Trustee filed an amended complaint against the remaining defendants. (ECF No. 106.)

The one-hundred sixteen (116) page amended complaint contains thirty-one (31) claims and three-hundred six (306) paragraphs of allegations. The claims are sorted by the alleged relationships between the defendants. The amended complaint alleges the following legal relationships among the Assorted and G Club Defendants:

1. G Club International and G Club Operations are also directly or indirectly owned by Jovial Century International Limited ("Jovial Century"), which is indirectly owned by Mr. Haoran He;

2. GFCA, GF Hold A, GF Hold B, GF International, GF IP, GFNY, and GF Italy (together with G Club International and G Club Operations, collectively, the "He Entities") are directly or indirectly owned by Jovial Century, which is indirectly owned by Mr. He;

3. GF Media (together with the GFCA, GF Hold A, GF Hold B, GF International, GF IP, GFNY, and GF Italy, collectively, the "GF Entities") is directly owned by Saraca Media Group, Inc. ("Saraca"), which is indirectly owned by Mr. Qiang Guo

4. Himalaya Currency, Himalaya Clearing, Himalaya Financial, Himalaya Payments, and Himalaya Reserves (collectively, the "Himalaya Entities") are directly owned by Major Lead, which is indirectly owned by Mr. Je;

5. ACA Capital is directly owned by Celestial Tide, which is directly owned by Mr. Je; and

6. Hamilton Capital, Hamilton Investment, and Hamilton Opportunity (collectively, the "Hamilton Entities", and, together with ACA Capital, Celestial Tide, the Himalaya Entities, and Major Lead, collectively, the "Je Entities") are directly owned by Mr. Je.

(Amended Complaint ¶¶ 9–31, Ex. 1 (organizational chart prepared by Trustee).) Jovial Century, Saraca, Mr. He, and Mr. Guo are among the severed defendants who defaulted on the original complaint. (*See* ECF Nos. 79, 102.)

The first three claims of the amended complaint are pled against the G Club Defendants and their legal owners. (Amended Complaint ¶¶ 145–59.) The fourth through sixteenth claims are pled against the GF Entities and their legal owners. (*Id.* ¶¶ 160–222.) The seventeenth through twenty-first claims are pled against the Himalaya Entities and their legal owners. (*Id.* ¶¶ 223–52.) The twenty-second through twenty-fifth claims are pled against defendants other than the Assorted and G-Club Defendants. (*Id.* ¶¶ 253–70.) The twenty-sixth claim is pled against ACA Capital and its legal owners. (*Id.* ¶¶ 271–76.) The twenty-seventh through twenty-ninth claims are pled against the Hamilton Entities and their legal owners. (*Id.* ¶¶ 277–94.) The final two claims are pled against defendants other than the Assorted and G-Club Defendants. (*Id.* ¶¶ 295–306.)

The relief sought varies based on the place where the corporate defendants are domiciled. The corporate entities among the Assorted and G Club Defendants are alleged to be domiciled as follows:

1. ACA Capital is a Hong Kong entity;

2. Celestial Tide, G Club International, GF International, Hamilton Investment, Himalaya Clearing, Himalaya Financial, Himalaya Payments, Himalaya Reserves, and Major Lead are British Virgin Islands ("BVI") entities;

3. Hamilton Capital is a United Kingdom ("UK") entity;

4. Hamilton Opportunity is a Cayman Islands entity;

5. Himalaya Currency (together with the entities formed under the laws of Hong Kong, BVI, UK, and Cayman Islands, collectively, the "Foreign Entity Defendants") is an Australian entity;

6. GFCA is a California entity;

7. G Club Operations is a Puerto Rico entity; and

> 8. GF IP, GF Italy, GF Media, and GFNY (together with the entities formed under California and Puerto Rico law, collectively, the "Domestic Entity Defendants") are Delaware entities.

(Amended Complaint ¶¶ 9–31, Ex. 1.)

Against each Foreign Entity Defendant, a single claim is brought. The Trustee seeks, pursuant to 11 U.S.C. §§ 541, 542, 544, declaratory judgment that, under applicable law, the legal owners hold each Foreign Entity Defendant and each Foreign Entity Defendant holds its property as a bare trustee for the true beneficial owner of the Foreign Entity Defendant and its property, the Individual Debtor; and, on these bases, an order requiring turnover of any ownership interests in each Foreign Entity Defendant and each Foreign Entity Defendant's property to the estate. (Amended Complaint ¶¶ 145–50, 160–77, 223–52, 271–94.)

Against each Domestic Entity Defendant, two claims are brought. First, the Trustee seeks, pursuant to 11 U.S.C. §§ 541, 542, 544, declaratory judgment that, under applicable law, each Domestic Entity Defendant is an *alter ego* of the Individual Debtor, and, on that basis, an order requiring turnover of each Domestic Entity Defendant's assets to the Trustee. (*Id.* ¶¶ 151–55, 178–82, 187–91, 196–200, 205–09, 214–18.) Second, the Trustee seeks, pursuant to 11 U.S.C. §§ 541, 542, 544, declaratory judgment that, under applicable law, the Individual Debtor is the equitable owner of each Domestic Entity Defendant and its assets, and, on these bases, an order requiring turnover of the ownership interests in and the property of each Domestic Entity Defendant.[2] (*Id.* ¶¶ 156–59, 183–86, 192–95, 201–04, 210–13, 219–22.)

On November 22, 2024, the Assorted Defendants' Motion was filed. (ECF No. 114.) On November 22, 2024, the G Club Defendants' Motion was filed. (ECF No. 116.) On December

[2] The Assorted and G Club Defendants raise no Fed. R. Civ. P. 12(b)(6) arguments relating to these beneficial ownership claims. Hence, the Court will not address the sufficiency of the Trustee's beneficial ownership claims regarding the Domestic Entity Defendants.

6, 2024, the Trustee filed an omnibus objection to the Motions to Dismiss. (ECF No. 121.) On December 20, 2024, the Assorted Defendants filed a reply. (ECF No. 125.) On December 24, 2024, the G Club Defendants filed a reply. (ECF No. 125.) The Motions to Dismiss are fully briefed.

On January 28, 2025, a hearing was held on the Motions to Dismiss. At the conclusion of the hearing, the Court took the matters under advisement. These matters are ripe for adjudication.

## III. JURISDICTION

The Assorted and G Club Defendants raise several objections to this Court's exercise of jurisdiction over them and this adversary proceeding.

### A. Subject Matter Jurisdiction

The Assorted and G-Club Defendants raise no objection to the United States District Court for the District of Connecticut having subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This Court has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the District of Connecticut dated September 21, 1984. The instant proceedings are statutorily core proceedings. 28 U.S.C. §§ 157(b)(2)(A), (E), (O). The Court concludes its exercise of jurisdiction is not precluded by Article III of the Constitution. *Cf. Stern v. Marshall*, 564 U.S. 462, 487–99 (2011).

### B. Sufficiency of Process

The G Club Defendants assert G Club International has not been properly called into this Court and, hence, the Court cannot exercise jurisdiction over it. In particular, they argue the amended complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(5) as to G Club International for lack of sufficient service of process. The G Club Defendants contend the

process server's declaration does not include information in an attached schedules showing that the summons and complaint were left with G Club International's agent for service of process. The Trustee objects that G Club International has been properly served with process under BVI law by the summons and complaint being left with G Club International's agent for service of process.

The G Club Defendants and the Trustee agree that service consistent with BVI law would satisfy the requirements of Fed. R. Civ. P. 4(h)(2) – made applicable in this adversary proceeding by Fed. R. Bankr. P. 7004(a)(1) – and be consistent with the BVI's assent to relevant provisions of the Hague Convention. BVI law provides:

**Service of process, etc. on company**

**101.** (1) Service of a document may be effected on a company by addressing the document to the company and leaving it at, or sending it by a prescribed method to—

*(a)* the company's registered office; or

*(b)* the office of the company's registered agent.

(2) The Regulations may provide for the methods by which service of a document on a company may be proved.

BVI Business Companies Act 2004, § 101. BVI regulations provide:

**Methods of proving service of documents**

**31.** (1) For purposes of section 101(2) of the Act, the service of a document on a company may be proved by any of the following methods—

*(a)* by properly addressing, preparing and posting an envelope containing the documents to the address for service;

*(b)* by personal service;

*(c)* by direct delivery to the secretary or clerk of the company's registered agent; and

*(d)* by email attaching the document.

(2) Where a document is served—

*(a)* by post, the document shall, unless the contrary is proved, be deemed to have been served at the time when the envelope would have been received in the ordinary course of post;

*(b)* by personal service, the document is considered served at the time when the document is received by the person on whom it is served, whether or not receipt of the document has been signed for;

*(c)* by direct delivery, the document is considered served on secretary or clerk at the time when the secretary or clerk received it, whether or not receipt of the document has been signed for; and

*(d)* by email, the document is considered served at the time at which it is shown to have been sent electronically if sent to the correct address.

(3) Where a document has been served by email—

*(a)* the original of the document shall be sent by post; and

*(b)* it shall not matter whether the document was served in a scanned or other form so long as it is legible and in the form of the original document.

BVI Business Companies Regulations 2012, SI 23/2012, 73/2015 & 75/2019, § 31.

The Court concludes the Trustee has properly served G Club International under BVI law. Pursuant to section 101(a) of the BVI Business Companies Act, G Club International may be served by leaving process with its registered agent for service of process. The process server certifies that such personal service was made and G Club International does not dispute that certification. (Certificate of Service Schedule A, ECF No. 39.) While the documents attached to the certificate of service reflect the agent for service of process did not accept service (*id.* Schedule B (email from Mr. Christopher Bromilow, counsel at Forbes Hare)), this is immaterial. Pursuant to section 31(b)(2) of the BVI Business Companies Regulations, it does not matter whether said registered agent accepted and signed for service. The G Club Defendants'

argument regarding insufficiency of service of process relies on the fact that the email from Forbes Hare does not explicitly mention G Club International. But, the certificate of service itself does. The G Club Defendants have not presented any evidence contradicting the signed and notarized certification. Therefore, no basis exists to dismiss the amended complaint as to G Club International for insufficiency of service of process.

**C. Personal Jurisdiction**

The Assorted and G Club Defendants argue the amended complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) as to the Foreign Entity Defendants and Mr. Je because the Court lacks personal jurisdiction over these defendants. They assert the Trustee fails to allege sufficient minimal contacts with the United States to support the assertion of personal jurisdiction. The Trustee objects, arguing the Court has personal jurisdiction (i) over the Foreign Entity Defendants on the basis of the allegations of the Individual Debtor's dominion and control over them; and (ii) over Mr. Je because the Trustee has alleged Mr. Je had sufficient contacts with the United States.

In determining a motion to dismiss for lack of personal jurisdiction, courts construe "all pleadings and affidavits in the light most favorable to the plaintiff and resolving all doubts in the plaintiff's favor" in order to discern whether the plaintiff makes "a prima facie showing that jurisdiction exists." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (internal citations omitted). The Court must apply this standard as it considers the parties arguments regarding the Foreign Entity Defendants and Mr. Je.

**1. Foreign Entity Defendants**

As to the Foreign Entity Defendants, the Trustee is correct personal jurisdiction may be established where a defendant is an *alter ego* of a person over whom a court has personal

jurisdiction. *So. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (citing *Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) and *Wm. Passalacqua Builders, Inc. v. Resnick Devs. So., Inc.*, 933 F.2d 131, 142–43 (2d Cir. 1991)). To establish *alter ego* jurisdiction, the complaint must allege sufficient facts, taken as true, to establish a *prima facie* case that the Foreign Entity Defendants are the *alter egos* of a person, over whom the Court has personal jurisdiction. *So. New Eng. Tel.*, 624 F.3d at 138.

No party disputes the Court has personal jurisdiction over the Individual Debtor. The issue is instead whether the Trustee has made a *prima facie* case that the Foreign Entity Defendants are *alter egos* of the Individual Debtor. In *Southern New England Telephone*, the Second Circuit determined the plaintiff made a *prima facie* case for *alter ego* under either federal common law or Connecticut law and, thus, did not determine which to apply. 624 F.3d at 139.

Because the Court is determining an issue of federal law, *i.e.*, the personal jurisdiction of a federal court, the Court will first consider federal common law before considering what other law may apply. Under federal common law, courts will disregard the corporate form where the alleged *alter ego* is under the "total and exclusive domination" of another, *So. New Eng. Tel. Co.*, 624 F.3d at 139 (citing *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1221 (2d Cir. 1987)), and piercing the corporate veil is "in the interests of public convenience, fairness and equity", *So. New Eng. Tel. Co.*, 624 F.3d at 139 (citing *Bhd. of Locomotive Eng'rs v. Springfield Terminal Ry. Co.*, 210 F.3d 18, 26 (1st Cir. 2000)).

Paragraph 4 of the amended complaint provides a general overview of the allegations against each defendant, including the Foreign Entity Defendants. (Amended Complaint ¶ 4, ECF 106.) Paragraphs 32 through 54 allege the Individual Debtor has engaged in an extensive shell game using numerous, intertwined shell companies nominally owned and controlled by family

members or close associates – including the Foreign Entity Defendants – to conceal his assets and evade his creditors, regulatory regimes, and criminal prosecution. (*Id.* ¶¶ 32–54.) Paragraph 55 lists family members, close associates, and agents of the Individual Debtor allegedly serving as his nominees. (*Id.* ¶ 55.)

Paragraphs 60 through 81 contain specific allegations regarding the Individual Debtor's exclusive use and control of, in pertinent part, G Club International and GF International. (*Id.* ¶¶ 60–81.) The amended complaint alleges these entities – and their domestic subsidiaries, affiliates, and other entities related to the Individual Debtor – had porous borders, shared employees, and interlinked financial affairs. (*Id.* ¶¶ 60–71.) Despite having no formal role other than as a "spokesperson", the complaint alleges the Individual Debtor had control over G Club International and GF International and the other entities to the exclusion of the entities themselves and their nominal leadership and ownership. (*Id.*) In particular, the amended complaint alleges the Individual Debtor used G Club International and GF International, together with the other entities, as shell companies to receive monies he solicited through his media enterprises, which monies he then used as his own to pay personal expenses and purchase assets, including clothing, luxury automobiles, a yacht, and a historic mansion, for personal use by the Individual Debtor and his family. (*Id.* ¶¶ 72–81.)

Paragraphs 82 through 96 allege the Individual Debtor exercised exclusive control over the Himalaya Entities and their direct parent, Major Lead. (*Id.* ¶¶ 82–96.) The amended complaint alleges the Himalaya Entities were used by the Individual Debtor to collect monies through a purported cryptocurrency promoted by the Individual Debtor on his media platforms. (*Id.* ¶ 84.) The Individual Debtor is alleged to have used these monies for his personal purposes, including the funding of an escrow account to secure the return of a yacht to the United States

territorial waters, and to have used the Himalaya Entities to transfer funds between other shell companies with no consideration. (*Id.* ¶¶ 90–93.) The business of the Himalaya Entities is alleged to have been intertwined with the Individual Debtor's media enterprises, the G Club Defendants, and the GF Entities. (*Id.* ¶¶ 82–85.) The nominal chief executive officer of the Himalaya Entities allegedly understood himself to be a mere "strawman" despite his title and that the Individual Debtor was in control, despite lacking any formal role at the entities. (*Id.* ¶ 85.) In the UK, the business was allegedly nominally held by Mr. Je, whom the amended complaint alleges was an agent of the Individual Debtor, in trust for Mr. Guo, the Individual Debtor's son. (*Id.* ¶ 86.)

Paragraphs 111 through 120 allege the Individual Debtor's exclusive use and control over ACA Capital and its direct owner, Celestial Tide. (*Id.* ¶¶ 111–20.) The amended complaint alleges ACA Capital was controlled by the Individual Debtor through his agents and employees who nominally owned and managed the company – including a personal translator who had no idea what ACA Capital was or did, did not participate in the operation of the entity, and reported to the Individual Debtor regarding a deposition she sat for as a representative of ACA Capital. (*Id.* ¶¶ 112–15.) The Individual Debtor allegedly used ACA Capital to fund other shell companies; pay his personal expenses, including in relation to his yachts, private jets, and residences; and pay his legal expenses. (*Id.* ¶¶ 116, 118.) ACA was allegedly itself funded via transfers from other entities related to the Individual Debtor. (*Id.* ¶ 117.)

Paragraphs 121 through 129 allege the Individual Debtor had exclusive ownership and control over the Hamilton Entities. (*Id.* ¶¶ 121–29.) The amended complaint alleges the Hamilton Entities were deeply intertwined with the Himalaya Entities and were nominally controlled by the same agents of the Individual Debtor. (*Id.* ¶¶ 122–23.) The Hamilton Entities

were allegedly used to launder monies obtained by, among others, the Himalaya Entities and the G Club Defendants to other shell companies, which shell companies then paid the Individual Debtor's personal expenses. (*Id.* ¶¶ 124–27.)

These allegations are supported by citation to numerous exhibits attached to the amended complaint. Upon review of the amended complaint, the Court concludes the Trustee pleads a *prima facie* case that the Individual Debtor exclusively and totally dominated the Foreign Entity Defendants and that piercing the corporate veil would be in the interests of public convenience, fairness and equity. *See So. New Eng. Tel. Co.*, 624 F.3d at 139. Accordingly, applying federal *alter ego* law, the Court would have personal jurisdiction over the Foreign Entity Defendants.

If federal common law does not apply, Connecticut choice of law rules determine what *alter ego* law this Court applies. *Geron v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013). Connecticut courts would generally apply the law of the jurisdiction of formation to *alter ego* claims, unless "some other state has a more significant relationship . . . to the person involved and the corporation, in which event the local law of the other state will be applied." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 303; *see Weber v. U.S. Sterling Secs., Inc.*, 924 A.2d 816, 822–23 (Conn. 2007) (applying local law of state of formation to *alter ego* action and other internal affairs regarding an LLC); RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 304.

Here, the Trustee alleges the Foreign Entity Defendants were incorporated in the UK, BVI, Hong Kong, and Australia – all Commonwealth jurisdictions where English law is either persuasive or binding. While *alter ego* exists in English law, its contours are unclear. *See* Prest v. Petrodel Res. Ltd. [2013] UKSC 34 (appeal taken from EWCA). In *Prest*, the UK Supreme Court held unanimously held a former husband beneficially owned several pieces of real

property and would be required to turn them over to satisfy his ex-wife's divorce judgment. Prest [2013] UKSC 34 [1]–[2], [43]–[52], [55]. Enroute to this conclusion, a majority of the justices determined (i) *alter ego* exists under English law; (ii) *alter ego* was not applicable on the facts before the court; and (iii) *alter ego* is, essentially, a doctrine of last resort that may apply in certain instances where more established doctrines fail. *Id.* at [27]–[36], [79]–[83], [89]–[95], [99]–[103], [106]. The lead opinion considered *alter ego* was a proper answer for "evasion" of existing liability as opposed to "concealment" of ownership, acknowledging that such evasion and concealment often coincide. *Id.* at [27]–[36]. While the concurrences agreed this may be the case, some saw other potential uses for *alter ego*. *Id.* at [79]–[83], [89]–[95], [99]–[103]. Only one justice stated *alter ego* does not exist in English law. *Id.* at [106].

Ultimately, the Court determines under Connecticut choice of law rules to apply federal common law. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 303, 304. Section 6 of the Restatement (Second) of Conflict of Laws sets forth seven factors to consider regarding which forum has the most significant relationship to the issue:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6.

Here, with respect to factor (g), while the Court can and has performed the analysis required under federal common law, it does not know how an English court would rule. While the Trustee alleges the Individual Debtor's shell game was designed, in part, to evade existing debts, the Trustee has pled beneficial ownership claims – and not *alter ego* claims – regarding the Foreign Entity Defendants and their assets. The Trustee is not seeking a remedy beyond what beneficial ownership can achieve under English law. Furthermore, the Court is not aware of the full panoply of doctrines English courts may apply in these circumstances, making it difficult to determine whether *alter ego* – a doctrine of last resort under English law – may be applied.

At the same time, with respect to factors (b) and (c), both federal common law and English law recognize that in certain circumstances the creditors of a principal may recover from the assets of said principal's corporate entities. *Prest* recognizes that, so long as a court has *in rem* jurisdiction over an asset, it can order that asset turned over to satisfy a judgment. [2013] UKSC 34 [47]. The Court has *in rem* jurisdiction over the assets of the estate, no matter where they are located or by whom they are held. 11 U.SC. § 541(a)(1). Similarly, with respect to factor (e), English law and federal common law both recognize limited liability can be abused and doctrines, including *alter ego*, exist to redress such abuse. *Compare* Prest, [2013] UKSC 34 [17]–[18], [34]–[35] *with So. New Eng. Tel. Co.*, 624 F.3d at 139. For these reasons factor (a) also supports applying federal common law.

Finally, applying federal common law to a question of federal jurisdiction advances certainty, predictability, and uniformity of result. Because the factors set forth in section 6 support applying federal common law, the Court concludes Connecticut choice of law rules support applying federal common law on these circumstances.

Accordingly, the Trustee has established a *prima facie* case that the Court has personal jurisdiction over the Foreign Entity Defendants as *alter egos* of the Individual Debtor.

**2. Mr. Je**

As to Mr. Je, a court may assert personal jurisdiction over a defendant essentially at home in the court's forum, *Daimler AG v. Bauman*, 571 U.S. 117, 127–33 (2014), or "if the defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate' to those activities", *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (internal citations omitted). For the purposes of personal jurisdiction, the entire United States is the forum of a court sitting in bankruptcy. Fed. R. Bankr. P. 7004(d); *Lehman Bros. Special Fin. Inc. v. Bank of Am. Nat'l Ass'n (In re Lehman Bros. Holdings Inc.)*, 544 B.R. 16, 29 (Bankr. S.D.N.Y. 2015).

In pertinent part, the amended complaint alleges Mr. Je is a long-time agent and financial manager of the Individual Debtor, both before and after the Individual Debtor moved his base of operations from the People's Republic of China to the United States, who worked out of the Individual Debtor's offices at 162 East 64th Street, New York City when he visited the United States. (Amended Complaint ¶¶ 3, 55(b)(i), 111–15, ECF No. 106.) Furthermore, the amended complaint alleges Mr. Je assisted the Individual Debtor in a wide-ranging shell game and a billion-dollar fraud and money-laundering scheme involving (i) bank accounts in the United States; (ii) the purchase of assets in the United States, such as a mansion in Mahwah, New Jersey and various motor vehicles; and (iii) the payment of the Individual Debtor's expenses in the United States. (*Id.* ¶¶ 39–41, 55(b)(i), 60, 63, 77, 83, 86, 89, 90, 93, 106–07, 115–29.) Mr. Je has been indicted by the United States regarding his role in these schemes, although he has not been arrested. (*Id.* ¶¶ 38–41.) Finally, the amended complaint alleges Mr. Je was involved in the

creation of an escrow account to secure the entry of an order by this Court. (*Id.* ¶¶ 90, 95.) All these allegations relate to the Individual Debtor's dominion and control over the entity defendants and their assets, for which dominion and control the Trustee seeks relief in this adversary proceeding.

In light of these allegations, the Court concludes the Trustee has established a *prima facie* case Mr. Je purposefully directed himself towards the United States and the injuries the Trustee seeks to redress in this adversary proceeding relate to that purposeful direction. Hence, the Court has personal jurisdiction over Mr. Je.

**D. Standing**

The Assorted and G Club Defendants argue the Trustee lacks standing to bring the claims asserted against them for beneficial ownership and/or *alter ego*. In particular, the Assorted and G Club Defendants contend (i) insofar as the Trustee brings his claims standing in the shoes of the Individual Debtor, he is *in pari delicto* and cannot assert his claims; and (ii) the Trustee cannot bring his claims standing in the shoes of creditors because they are not general claims of creditors. The Assorted and G Club Defendants assert the Trustee's claims are, *sub rosa*, the particularized claims of (a) the defendants for conversion; and/or (b) the victims of the crimes of which the Individual Debtor was convicted in the criminal action styled *United States v. Guo*, No. 23 cr 118 (AT) (S.D.N.Y. Jan. 7, 2025). The Trustee argues he has standing to assert the claims because they are general claims of creditors.

The Court agrees with the Trustee. Under binding authority, the Court may not rewrite the complaint as the Assorted and G Club Defendants wish, such that it pleads conversion of G Club's property and/or fraud against G Club's investors. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and

reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."); *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018) (standard for pleading standing is lower than that for pleading the merits). Instead, as outlined above, the Trustee clearly alleges beneficial ownership and *alter ego*: he alleges the Assorted and G Club Defendants were mere façades for the Individual Debtor, their business was *his* business, and their assets were *his* assets. *See Warth*, 422 U.S. at 518.

The Bankruptcy Code provides a bankruptcy trustee standing to bring certain claims on behalf of creditors, namely, general claims of creditors at large as opposed to the particularized claims of particular creditors. *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir. 1989). Absent such statutory authority, "a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." *Shearson Lehman Hutton Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991); *see Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995); *Sobchack v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*, 17 F.3d 600, 607 (2d Cir. 1994). Where a bankruptcy trustee is not asserting a claim on behalf of creditors, *Wagoner* directs courts to determine (i) whether the debtor could have brought the claim and (ii) if so, whether the trustee is *in pari delicto* by imputation of the debtor's conduct. *Wagoner*, 944 F.2d at 119–20. Although an assertion of *in pari delicto* is typically considered an affirmative equitable defense, the *Wagoner* doctrine, including its consideration of *in pari delicto*, "functions as a prudential standing limitation." *Carney ex rel. Highview Point Partners, LLC v. Horion Invs. Ltd.*, 107 F. Supp. 3d 216, 228 (D. Conn. 2015).

Here, the Trustee is bringing claims on behalf of creditors. *Alter ego* is a general claim of creditors at large, which a trustee has standing to assert. *Stadtmauer v. Tulis (In re Nordlicht)*, 115 F.4th 90, 111 (2d Cir. 2024) ("In sum, the district court correctly determined that the reverse veil-piercing theory asserted by the Stadtmauers in the State Complaint constituted a general claim, was the property of the bankruptcy estate, and thus within the Trustee's authority to settle.").[3] A trustee also has standing to assert beneficial ownership because any and all judgment creditors could bring such claims to collect on their judgment. *See* Prest, [2013] UKSC 34 [43]–[56] (holding judgment creditor could assert beneficial ownership to collect on judgment and that this was *not* unique to family court proceedings); *LiButti v. United States*, 968 F. Supp. 71, 75 (N.D.N.Y. 1997) (applying federal common law), *aff'd in part, rev'd in part on other grounds*, 178 F.3d 114 (2d Cir. 1999); *Paloian ex rel. Dordevic v. Dordevic (In re Dordevic)*, 633 B.R. 553, 558 (Bankr. N.D. Ill. 2021) (applying federal common law in absence of articulated state law standard), *aff'd by* 67 F.4th 372 (7th Cir. 2023).

Accordingly, the Trustee has standing on behalf of creditors and the Court need not consider the *Wagoner* doctrine.

* * *

---

[3] Although the Assorted and G Club Defendants argue to the contrary, it does not matter whether the Trustee brings his claims under section 541 or section 544(a) – he brings his claims under *both* sections – because, in either event, he brings his claims on behalf of creditors at large. *Nordlicht*, 115 F.4th at 105 ("However, not all claims asserted by a creditor are 'property of the estate.' Only 'general' claims are; 'personal' claims are not. General claims 'arise[ ] from [the] harm done to the estate,' and thus 'could be brought by any creditor'. General claims are 'property of the estate,' because they 'inure[ ] to the benefit of all creditors' by enlarging the estate,' thereby making 'the trustee . . . the proper person to assert the claim'. [T]he creditors are bound by the outcome of the trustee's action.'") (internal citations omitted, other alterations in original). Furthermore, *Wagoner* does not address claims brought on behalf of creditors – its holdings only apply to claims brought on behalf of a debtor. 944 F.2d at 118 ("The trustee insists he is not asserting the claims of the noteholders, so it is unnecessary for us to delve deeply into when, if ever, a trustee may sue a third party on behalf of the bankrupt's creditors.").

For the reasons stated above, the Court concludes it has authority to hear and determine this adversary proceeding upon reference from the District of Connecticut, which has both subject matter jurisdiction and personal jurisdiction over the Assorted and G Club Defendants. Furthermore, the Court concludes the Trustee has standing to assert his claims. Finally, venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## IV. DISCUSSION

Turning to the merits, the Assorted and G Club Defendants argue the Trustee has failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6), (c), *made applicable by* Fed. R. Bankr. P. 7012(b); *see also Lively v. Wafra Inv. Advisory Grp., Inc.*, 6 F.4th 293, 302 (2d Cir. 2021) (motions for judgment on the pleadings are subject to the same standard as a motion to dismiss). In determining whether the amended complaint states claims upon which relief may be granted, the Court must take the well-pled allegations, including those in documents attached to the complaint, as true. *See Hughes v. Rowe*, 449 U.S. 5, 10 (1980); *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 208 (2d Cir. 2012); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *Tatum v. Oberg*, 650 F. Supp. 2d 185, 189 (D. Conn. 2009). The Court must also draw all reasonable inferences in the Trustee's favor. *Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014).

To be well-pled, the Trustee's claims must contain "a short and plain statement showing the pleader is entitled to relief". Fed. R. Civ. P. 8(a), *made applicable by* Fed. R. Bankr. P. 7008. They must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'". *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "plausibility standard", while not a "probability requirement", requires more than a "sheer possibility that a defendant has acted unlawfully."

*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Determining the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

The Court will first address the Assorted Defendants' Motion and then the G Club Defendants' Motion.[4] To the extent each joins in the other's arguments, the discussion applies to both Motions to Dismiss.

**A. Assorted Defendants' Motion**

The Assorted Defendants argue the amended complaint must be dismissed because: (i) the Trustee does not sufficiently plead *alter ego* under California or Delaware law; (ii) the Trustee does not sufficiently plead foreign defendants are mere nominees for the Individual Debtor; and (iii) the Trustee pleads no cause of action against Celestial Tide, Major Lead, and Mr. Je. The Trustee argues (a) he has sufficiently pled *alter ego* under California and Delaware law; (b) he has sufficiently pled foreign defendants are beneficially owned by the Individual Debtor; and (c) he seeks relief against Celestial Tide, Major Lead, and Mr. Je as nominee owners of the other defendants.

**1. *Alter ego* under California law**

Turning to the Assorted Defendants' first argument, Connecticut courts would likely apply California law to issues involving the internal affairs of a California entity, such as, here,

[4] The Court will not address the argument the Assorted and G Club Defendants asserted at the end of the hearing regarding whether the property of the Assorted and G Club belongs to the victims of the Individual Debtor's crimes rather than the Individual Debtor because it was not raised in the Motions to Dismiss.

GFCA. *See Thelen*, 736 F.3d at 219; *Weber*, 924 A.2d at 822–23. Under California law, *alter ego* has two elements:

> First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone.

*Sonora Diamond Corp. v. Sup. Ct.*, 83 Cal. App. 4th 523, 538 (2000) (citing *Automotriz del Golfo de Cal. S.A. de C.V. v. Resnick*, 306 P.2d 1 (Cal. 1957) and other cases); *see Robbins v. Blecher*, 52 Cal. App. 4th 886, 892 (1997) (same) (citing *Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 993 (1995)).

With respect to the first element, California courts consider

> many factors, including 'the commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one as a mere shell or conduit for the affairs of the other.

*Highland Springs Conf. & Training Ctr. v. City of Banning*, 244 Cal. App. 4th 267, 280–81 (2016) (citing *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1342 (2009)). Courts also consider, among other things, "inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers." *Sonora Diamond*, 83 Cal. App. 4th at 539. None of these factors is dispositive. *Highland Springs*, 244 Cal. App. at 281. As to the second element, California courts "must consider all of the circumstances of the case in determining whether it would be equitable to impose alter ego liability." *Id.*

The amended complaint contains, among others, the following allegations with respect to GFCA:

> (a) paragraphs 32 through 55 of the amended complaint allege the Individual Debtor uses numerous, intertwined shell companies, including GFCA, nominally owned and controlled by family members or close associates to conceal his assets and evade his

creditors, regulatory regimes, and criminal prosecution (Amended Complaint ¶¶ 32–55, ECF 106);

(b) paragraph 55 alleges GFCA's ultimate nominal owner, Mr. He, as well as several officers of GFCA are agents of the Individual Debtor (*id.* ¶¶ 55(b)(iii), (d)(ii), (e)(i)–(ii));

(c) paragraph 68 and 70 allege GFCA operated out of the Individual Debtor's offices in New York City, which were used by numerous corporate *alter egos* of the Individual Debtor (*id.* ¶¶ 68, 70);

(d) paragraphs 60 through 81 contain specific allegations regarding, among other things, the Individual Debtor's exclusive use and control of GFCA (*id.* ¶¶ 60–81), including:

(i) the "G" in GFCA stands for "Guo", the Mandarin pronunciation of the Individual Debtor's family name, by which the Individual Debtor is also known (*id.* ¶ 60);

(ii) GFCA has porous borders, shared employees, and interlinked financial affairs with other entities associated with the Individual Debtor (*id.* ¶¶ 60–71);

(iii) officers, directors, and employees of GFCA or the intertwined GF Entities understood the Individual Debtor – nominally only a "spokesperson" – to be the "boss" or "principal" with executive control over the GF Entities' business, including the designs of its clothing lines (*id.* ¶ 62; *see id.* ¶¶ 55(b)(iii), (d)(ii), (e)(i)–(ii), 61, 63(a));

(iv) many GFCA expenses were funded by the Individual Debtor through his *alter ego* HCHK Technologies, Inc. (*id.* ¶ 73 n. 121);

(v) GFCA provided IP to GF IP for a nominal amount never repaid (*id.* ¶ 74);

(vi) the Individual Debtor used GFCA, together with other entities, as shell companies to receive monies he solicited through his media enterprises, which monies he then used as his own to pay personal expenses and purchase assets, including clothing, luxury automobiles, a yacht, and a historic mansion, for personal use by the Individual Debtor and his family (*id.* ¶¶ 72–81; *see id.* ¶ 4(a)(ii)); and

(e) the allegations in the amended complaint are supported by attached exhibits, including testimony adduced at the Individual Debtor's criminal trial.

The Trustee plausibly alleges (i) the commingling of funds and assets of the Individual Debtor and GFCA; (ii) the Individual Debtor's equitable ownership of GFCA; (iii) the Individual

Debtor's use of the same directors, officers, employees at GFCA as at other alleged *alter egos*; (iv) the Individual Debtor shares office space with GFCA; (v) corporate formalities at GFCA were disregarded; (vi) GFCA's records were shared with other *alter egos*; (vii) the Individual Debtor uses GFCA as a mere shell or conduit for his personal business; (viii) and the Individual Debtor so uses GFCA as part of a shell game to hinder, delay, or defraud his creditors. The Court concludes the Trustee has plausibly alleged the two elements of *alter ego* under California law.

**2. *Alter ego* under Delaware law**

With respect to the Assorted Defendants' second argument, Connecticut courts would likely apply Delaware law to issues involving the internal affairs of GF IP, GF Italy, GFNY, and GF Media, each a Delaware entity. *See Thelen*, 736 F.3d at 219; *Weber*, 924 A.2d at 822–23. Under Delaware law, *alter ego* or piercing the corporate veil has two elements: (i) the corporate entity whose form is to be disregarded is so dominated and controlled by its alleged *alter ego* that the corporate entity and its *alter ego* are, in fact, a single economic unit; and (ii) the corporate form to be disregarded causes fraud or some similar injustice. *See Pauley Petroleum Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968); *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999); *Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 793 (Del. Ch. 1992); *see also Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995) (applying Delaware law); *Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 549 B.R. 21, 43–44 (Bankr. S.D.N.Y. 2016) (applying Delaware law).

With respect to the first element, Delaware courts consider several factors, including without limitation "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company

simply functioned as a facade for the dominant shareholder." *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 706 (Del. Ch. 2021) (internal citations omitted); *see Blair v. Infineon Tech., AG*, 720 F. Supp. 2d 462, 470–71 (D. Del. 2010). None of these factors is dispositive in determining dominion and control. *Manichaean Cap.*, 251 A.3d at 706–07; *Infineon Tech.*, 720 F. Supp. 2d at 471. Regarding the second element, it is not necessary to allege (i) fraud – it is only necessary to allege injustice, *Fletcher*, 68 F.3d at 1457, or (ii) fraudulent intent in the creation of the corporate form – it is only necessary to allege that the corporate form *causes* fraud or a similar injustice, *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177 (2d Cir. 2008) (applying Delaware law); *see Martin v. D.B. Martin Co.*, 88 A. 612, 615–16 (Del. Ch. 1913).

Delaware law allows outsider reverse veil-piercing, namely, making the assets of an entity available to the creditors of its parent or owner. *Manichaean Cap.,* 251 A.3d at 714–15. In considering whether to reverse pierce the corporate veil, courts consider "the traditional factors Delaware courts consider when reviewing a traditional veil-piercing claim", discussed above, as well as additional factors reflecting the concern that creditors and other stakeholders of the entity might have their legitimate expectations thwarted. *Id.* At this stage in the litigation, Court must determine whether the well-pled allegations of the amended complaint read in the light most favorable to the Trustee establish impermissible prejudice to innocent third-party stakeholders. *See Manichaean Cap.*, 251 A.3d at 718.

The amended complaint contains, among others, the following allegations with respect to GF IP, GF Italy, GFNY, and GF Media:

(a) paragraphs 32 through 55 of the amended complaint allege the Individual Debtor uses numerous, intertwined shell companies, including GF IP, GF Italy, GFNY, and GF Media, nominally owned and controlled by family members or close associates to

conceal his assets and evade his creditors, regulatory regimes, and criminal prosecution (Amended Complaint ¶¶ 32–55, ECF 106);

(b) paragraph 55 alleges GF IP, GF Italy, and GFNY's ultimate nominal owner, Mr. He, is an agent of the Individual Debtor, GF Media's ultimate nominal owner, Mr. Guo, is the Individual Debtor's son, and the CEO of GF IP, GF Italy, GFNY, and GF Media is an agent of the Individual Debtor (*id.* ¶¶ 55(a)(ii), (b)(iii), (e)(i));

(c) paragraphs 68 and 70 allege GF IP, GF Italy, GFNY, and GF Media operated out of the Individual Debtor's offices in New York City, which were used by numerous corporate *alter egos* of the Individual Debtor (*id.* ¶¶ 68, 70);

(d) paragraphs 60 through 81 contain specific allegations regarding, among other things, the Individual Debtor's exclusive use and control of GF IP, GF Italy, GFNY, and GF Media (*id.* ¶¶ 60–81), including:

(i) the "G" in GF IP, GF Italy, GFNY, and GF Media stands for "Guo", the Mandarin pronunciation of the Individual Debtor's family name, by which the Individual Debtor is also known (*id.* ¶ 60);

(ii) GF IP, GF Italy, GFNY, and GF Media have porous borders, shared employees, and interlinked financial affairs with other entities associated with the Individual Debtor (*id.* ¶¶ 60–71);

(iii) officers, directors, and employees of the commingled GF Entities understood the Individual Debtor – nominally only a "spokesperson" – to be the "boss" or "principal" with executive control over the GF Entities' business, including the designs of its clothing lines (*id.* ¶ 62; *see id.* ¶¶ 55(b)(iii), (d)(ii), (e)(i)–(ii), 61, 63(a));

(iv) many GF IP, GF Italy, GFNY, and GF Media expenses were funded by the Individual Debtor through other *alter egos* (*id.* ¶¶ 73(a), (c), (e), n. 121, 74);

(v) the Individual Debtor used GF IP, GF Italy, GFNY, and GF Media, together with other entities, as shell companies to receive monies he solicited through his media enterprises, which monies he then used as his own to pay personal expenses and purchase assets, including clothing, luxury automobiles, a yacht, and a historic mansion, for personal use by the Individual Debtor and his family (*id.* ¶¶ 72–81; *see id.* ¶ 4(a)(ii)); and

(e) the allegations in the amended complaint are supported by attached exhibits, including testimony adduced at the Individual Debtor's criminal trial.

The Trustee plausibly alleges (i) GF IP, GF Italy, GFNY, and GF Media were only ephemerally capitalized as monies transferred between shell companies for no consideration and

with no relationship to the shell companies' alleged business purposes; (ii) GF IP, GF Italy, GFNY, and GF Media did not observe corporate formalities; (iii) the Individual Debtor siphoned funds from GF IP, GF Italy, GFNY, and GF Media; (iv) GF IP, GF Italy, GFNY, and GF Media were mere façades used by the Individual Debtor to insulate himself from liability for his solicitations for investment and to shield assets from his creditors; and (iv) the Individual Debtor has used the corporate form of GF IP, GF Italy, GFNY, and GF Media to hinder, delay, or defraud his creditors. The Court concludes the Trustee has plausibly alleged the two elements of *alter ego* under Delaware law. Moreover, the allegations do not support the conclusion that creditors and other stakeholders in GF IP, GF Italy, GFNY, and GF Media would be prejudiced by an *alter ego* determination.

**3. Beneficial ownership under English law**

Regarding the third argument, Connecticut courts would likely apply English law to issues concerning the internal affairs of ACA Capital, GF International, Hamilton Investment, Hamilton Capital, Hamilton Opportunity, Himalaya Clearing, Himalaya Financial, Himalaya Payments, Himalaya Reserves, and Himalaya Currency. *See Thelen*, 736 F.3d at 219; *Weber*, 924 A.2d at 822–23. Under English law, "[w]hether assets legally vested in a company are beneficially owned by its controller is a highly fact-specific issue. It is not possible to give general guidance going beyond the ordinary principles and presumptions of equity, especially those relating to gifts and resulting trusts." Prest, [2013] UKSC 34 [52].

There are "three certainties necessary to create a trust", namely, (i) "certainty of intention", (ii) "certainty of subject matter", and (iii) "certainty as to the object of the trust". Pleshakov v. Sky Stream Corp. [2021] UKPC 15 (appeal from ECSC (AC)) [41]. These "certainties" may be established by inference from the facts and circumstances and does not

require a written trust agreement be produced. Pleshakov [2021] UKPC 15 [48]–[49], [53]. Among other considerations, English courts have considered factors such as: (i) timing of the creation of the alleged nominee entity relative to acquisition of the asset; (ii) whether the alleged nominee entity has any other assets or business operations; (iii) whether the alleged beneficial owner controlled the acquisition of the asset; (iv) whether the alleged beneficial owner funded the purchase of the asset; (v) whether the alleged beneficial owner used the asset; and (vi) whether the beneficial owner paid the alleged nominee for such use of the asset. NRC Holding Ltd. v. Danilitskiy [2017] EWHC 1431 (Ch) [39]; *see* Conbussen Principal Inv. Holdings Ltd. v. Akbar [2020] EWHC 2805 (QB) [47]–[48].

The Commonwealth entities at issue are ACA Capital, GF International, Hamilton Investment, Hamilton Capital, Hamilton Opportunity, Himalaya Clearing, Himalaya Financial, Himalaya Payments, Himalaya Reserves, and Himalaya Currency. The Court has already discussed the allegations related to these entities in subsection C of the jurisdiction section above. On the basis of those allegations, the Court concludes the Trustee has plausibly alleged facts and circumstances establishing the intent that ACA Capital, GF International, Hamilton Investment, Hamilton Capital, Hamilton Opportunity, Himalaya Clearing, Himalaya Financial, Himalaya Payments, Himalaya Reserves, and Himalaya Currency and their assets be held in trust for the Individual Debtor. The Trustee has plausibly alleged beneficial ownership under English law.

**4. Claims against nominee defendants**

Turning to the Assorted Defendants' final argument, the Trustee seeks relief against Celestial Tide, Major Lead, and Mr. Je. He seeks the ownership interests they hold in ACA Capital, Himalaya Payments, Himalaya Currency, Himalaya Financial, Himalaya Clearing,

Himalaya Reserves, Hamilton Capital, Hamilton Investment, and Hamilton Opportunity. The Assorted Defendants' argument to the contrary is not supported by the record.

**B. G Club Defendants' Motion**

The G Club Defendants argue the amended complaint must be dismissed because: (i) *alter ego* is a remedy, not a cause of action under Puerto Rico law; (ii) the Trustee does not sufficiently plead *alter ego* under Puerto Rico law; (iii) *alter ego* is not recognized by BVI law; and (iv) the redactions in the amended complaint are improper. The Trustee argues (a) he has sufficiently pled *alter ego* under Puerto Rico law; (b) he has sufficiently pled G Club International is beneficially owned by the Individual Debtor; and (c) the redactions are proper under this Court's orders.

**1. *Alter ego* under Puerto Rico law**

**a. *Alter ego* is a claim in bankruptcy**

As to the G Club Defendants' first arguments, the Court agrees with the Trustee. Regardless of whether *alter ego* is stated to be a remedy or a claim at state law, it is a claim in bankruptcy. *Nordlicht*, 115 F.4th at 107–111 (discussing New York law and holding both (i) the Bankruptcy Code preempts state law and (ii) it is a companion claim under New York law, not actually a remedy). The Trustee is deemed a judgment creditor as of the petition date. 11 U.S.C. § 544(a). Similarly, claims asserted against the estate are deemed allowed unless an objection is filed. 11 U.S.C. § 502(a). The Trustee can bring an *alter ego* claim on behalf of creditors at large as a companion claim to his deemed, generic judgment and the filed proofs of claim. *See Nordlicht*, 115 F.4th at 111.

The G-Club Defendants' reliance on *Spradlin v. Beads & Steeds Inns, LLC (In re Howland)*, 674 F. App'x 482 (6th Cir. 2017) is misplaced. "Under the vicarious liability

approach, however, veil piercing does not give the pierced entity (*i.e.*, the debtor) an interest in its alter ego's assets—it gives the pierced entity's *creditor* (*i.e.*, the trustee) an interest in the alter ego's assets in order to satisfy its judgment against the pierced debtor." *Howland*, 674 F. App'x at 487; *see Nordlicht*, 115 F.4th at 105 ("General claims are 'property of the estate' . . . because they 'inure[] to the benefit of all creditors' by enlarging the estate'") (quoting *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014)) (alterations other than ellipses in original). In this adversary proceeding, *Howland* supports the availability of the Trustee's requested relief, *i.e.*, the turnover of G Club's assets to the estate, without regard to whether Puerto Rico *alter ego* law merely imposes vicarious liability.

**b. The Trustee sufficiently pleads *alter ego* under Puerto Rico law**

Turning to the second argument, Connecticut courts would likely apply Puerto Rico law to G Club, a Puerto Rico entity. *See Thelen*, 736 F.3d at 219; *Weber*, 924 A.2d at 822–23. Under Puerto Rico law, a plaintiff seeking an *alter ego* judgment must plead "(1) that 'there is no adequate separation between the corporation and the stockholder,' and (2) that piercing the corporate veil is necessary to avoid 'sanctioning fraud, promoting injustice, evading a legal obligation, defeating public policy, justifying inequity, protecting fraud, or defending crime.'" *Colon v. Blades*, 914 F. Supp. 2d 181, 192 (D.P.R. 2011) (citing translation of *Departamento de Asuntos del Consumidor v. Alturas de Florida Dev. Corp.*, 132 D.P.R. 905, 927 (1993)). For the reasons set forth below, the Court concludes the Trustee has plausibly pled *alter ego* under Puerto Rico law.

With respect to the first element, lack of adequate separation, Puerto Rico courts consider various factors, including:

> (1) the stockholder's control of corporate affairs; (2) the treatment of corporate assets as personal assets; (3) the unrestricted withdrawal of corporate capital; (4) the commingling

> of corporate and personal assets; (5) the inadequate structure of corporate capital; (6) the lack of corporate records; (7) the nonobservance of corporate formalities; (8) inaction of the other officers and directors; (9) failure to declare dividends; (10) the stockholder's holding himself or herself out as being personally liable for the obligations of the corporation; and (11) management of the corporation without regard to its independent existence.

*Colon*, 914 F. Supp. 2d at 192 (citing translation of *Alturas*, 132 D.P.R. at 928 n. 3). With respect to the second, "the fraud, injustice or unfairness must be in the *use of the corporate form*", such as "transferring a corporation's assets in a 'shell game' of separate entities". *Colon*, 914 F. Supp. 2d at 193 (citing *ASARCO LLC v. Ams. Mining Corp.*, 396 B.R. 278, 321 (S.D. Tex. 2008) (applying Delaware law)). There is no requirement that the plaintiff plead fraud: the plaintiff must show "fraud, injustice *or* unfairness". *Colon*, 914 F. Supp. 2d at 193 (emphasis added).

The amended complaint contains, among others, the following allegations regarding G Club:

(a) paragraphs 32 through 55 of the amended complaint allege the Individual Debtor uses numerous, intertwined shell companies, including G Club, nominally owned and controlled by family members or close associates to conceal his assets and evade his creditors, regulatory regimes, and criminal prosecution (Amended Complaint ¶¶ 32–55, ECF 106);

(b) paragraph 55 alleges G Club's ultimate nominal owner, Mr. He, is an agent of the Individual Debtor and several key officers, directors, employees, and agents of G Club are agents of the Individual Debtor (*id.* ¶¶ 55(b)(ii), (iii), (c)(i), (iii)–(v), (d)(ii)–(vi), (e)(iii));

(c) paragraphs 68 and 70 allege G Club was operated out of the Individual Debtor's offices in New York City, which were used by numerous corporate *alter egos* of the Individual Debtor (*id.* ¶¶ 68, 70);

(d) paragraphs 60 through 81 contain specific allegations regarding, among other things, the Individual Debtor's exclusive use and control of G Club (*id.* ¶¶ 60–81), including:

(i) the "G" in G Club stands for "Guo", the Mandarin pronunciation of the Individual Debtor's family name, by which the Individual Debtor is also known (*id.* ¶ 60);

(ii) G Club has porous borders, shared employees, and interlinked financial affairs with other entities associated with the Individual Debtor (*id.* ¶¶ 60–71);

(iii) the CEO of G Club understood it was the Individual Debtor – not her – who was in charge of G Club despite being nominally only a spokesperson (*id.* ¶ 62; *see id.* ¶¶ 55(b)(iii), (d)(ii), 61, 63);

(iv) many GF IP, GF Italy, GFNY, and GF Media expenses were funded by the Individual Debtor through other *alter egos* (*id.* ¶¶ 73(a), (c), (e), n. 121, 74);

(v) the Individual Debtor used G Club, together with other entities, as shell companies to receive monies he solicited through his media enterprises, which monies he then used as his own to pay personal expenses and purchase assets, including clothing, luxury automobiles, a yacht, and a historic mansion, for personal use by the Individual Debtor and his family (*id.* ¶¶ 72–81; *see id.* ¶ 4(a)(i)); and

(e) the allegations in the amended complaint are supported by attached exhibits, including testimony adduced at the Individual Debtor's criminal trial.

The Trustee plausibly alleges (i) the Individual Debtor controlled G Club's affairs; (ii) the Individual Debtor treated G Club's assets as his own; (iii) the Individual Debtor had unrestricted access to G Club's monies; (iv) G Club's assets were commingled with the Individual Debtor's assets as well as those of other companies he controls; (v) G Club was ephemerally capitalized because its monies were freely transferred without consideration; (vi) G Club did not observe corporate formalities in that (a) it was controlled by the Individual Debtor to the exclusion of its nominal officers and directors, and (b) it had porous borders with other entities related to the Individual Debtor; (vii) G Club's nominal officers and directors lacked control over G Club and allowed the Individual Debtor to assert control; (viii) G Club was managed without regard for its independent existence; and (ix) G Club's corporate form was used to further a shell game and caused the Individual Debtor's creditors to be hindered, delayed, or defrauded. Moreover, insofar as Puerto Rico law requires the Individual Debtor to be an owner of G Club, the Trustee has alleged he beneficially owns G Club – which allegations the G Club Defendants have not

argued are insufficient. The Trustee plausibly alleges the two elements of *alter ego* under Puerto Rico law.

**2. Beneficial ownership under English law**

Turning to the third argument, Connecticut courts would likely apply English law to questions concerning the internal affairs of G Club International. *See Thelen*, 736 F.3d at 219; *Weber*, 924 A.2d at 822–23. The Court has already (a) set forth the standard for beneficial ownership under English law in subsection A, 3 of the discussion section; and (b) discussed the allegations related to G Club International in subsection C of the jurisdiction section above. The Court concludes the Trustee has plausibly alleged facts and circumstances establishing the intent that G Club International and its assets be held in trust for the Individual Debtor. The Trustee has plausibly pled beneficial ownership under English law.

**3. Redaction of the amended complaint**

Finally, with respect to the fourth argument, the Trustee redacted certain information because that information was produced to him as confidential or highly confidential under the applicable protective order and the Court has ordered him to file such information under seal. (Avoidance Action Procedures Order ¶ 2(d), Main Case ECF No. 3163.) The Court concludes the Trustee's compliance with this Court's order provides no basis to dismiss the complaint. This is a frivolous argument. Fed. R. Bankr. P. 9011. If the G Club Defendants +wish for the information to be unsealed, they may move to unseal the information. Nothing is preventing them from filing such a motion.

## V. CONCLUSION AND ORDER

For the reasons stated above, it is hereby

**ORDERED:** The Motions to Dismiss are **DENIED**; and it is further

**ORDERED:** The Trustee and the Assorted and G Club Defendants shall meet and confer to discuss, among other things, an agreed upon date for the Assorted and G Club Defendants to file an answer to the amended complaint.

Dated at Bridgeport, Connecticut this 23rd day of April, 2025.

